UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

BARRY HUNTER                                                                    Plaintiff

v.                                                                  Civil Action No. 4:25-cv-20-RGJ

PEABODY ENERGY, ET AL.                                              Defendants

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Barry Hunter ("Hunter") moves for summary judgment [DE 20]. Defendants Peabody Coal Company, LLC, and Peabody Energy Corporation (collectively, "Defendants") move for an extension of time to respond to the motion for summary judgment [DE 26] and then filed a late response to the motion for summary judgment [DE 27]. Hunter responded [DE 28] to the motion for extension, and Hunter replied in support of his summary judgment motion [DE 29]. Briefing is complete and the matter is ripe. For the reasons set forth below, the Court **GRANTS** Defendants' motion for an extension of time [DE 26] and **GRANTS IN PART** Hunter's motion for summary judgment [DE 20].

## I.      BACKGROUND

A.  Procedural and Factual Background

Hunter was employed by Defendants from 1969 through 2001, during which time he was exposed to coal and rock dust, leading to long-term breathing issues. [DE 20-13 at 1010–12, 1044]. On March 21, 2017, Hunter filed a claim for disability benefits pursuant to the Black Lung Benefits Act ("BLBA") with the Department of Labor ("DOL") Office of Workers' Compensation Programs ("OWCP"). [DE 27-1]. On January 4, 2019, an OWCP claims examiner issued a "Proposed Decision and Order" finding that Hunter had contracted pneumoconiosis as a result of

his coal mine employment and was entitled to benefits, to be paid by Defendants. [OWCP Proposed Decision and Order, DE 27-2 at 1422]. Defendants then appealed the determination to the DOL Office of Administrative Law Judges ("OALJ") and requested a formal hearing before an Administrative Law Judge ("ALJ"). [Notice of Appeal, DE 27-3]. Meanwhile, on February 12, 2019, the District Director for OWCP sent a letter to Defendants instructing that they must begin payment of benefits within 30 days of the date of the letter. [DE 27-5 at 1438]. The letter also instructed Defendants that

> [s]hould you fail to begin payment to the claimant, benefits will be paid by the Black Lung Disability Trust Fund in accordance with 20 CFR 725.420(a). If you are subsequently determined to be liable for the claim, you will be required to reimburse the Fund for all payments made up to that time. In addition, in accordance with 725.420(c) you will be liable for such penalties and interest as are deemed appropriate together with the payment of the claimant's attorney fee, if any.

[*Id.*]. Also on February 12, OWCP sent a letter to Hunter informing him that payments would be made from the Black Lung Disability Trust Fund ("Trust Fund") until his claim was finally decided. [DE 27-6 at 1443]. The letter also explained that the Trust Fund's payment of benefits would be limited to benefits accruing from the date of the initial determination, which in this case was $990.10 per month. [*Id.*]. The District Director then referred the matter to the OALJ. [DE 20-13 at 3].

The ALJ held a hearing on December 11, 2019, and issued a decision on May 24, 2021, finding that Hunter was entitled to benefits dating back to March 2017, to be paid by Defendants. [ALJ Decision and Order, DE 20-14]. Accordingly, on June 1, 2021, the OCWP sent Defendants a letter (hereinafter, "June 1, 2021 computation of benefits") instructing them to pay: (1) $22,649.20 to Hunter for benefits from March 2017 through January 2019; (2) $28,607.20 to the Trust Fund for interim benefits paid to Hunter from February 2019 through May 2021; (3) $2,508.04 to the DOL for diagnostic testing and travel; (4) $4,571.25 to the DOL for medical

treatment incurred; and (5) $1,040.40 per month to Hunter beginning in June 2021 [DE 27-8 at 1479]. Meanwhile, Defendants appealed the ALJ decision to the DOL Benefits Review Board. [DE 27-9]. While the appeal was pending, the Trust Fund continued to pay Hunter his benefits. [DE 20-12].

On December 28, 2022, the Benefits Review Board affirmed the ALJ's decision with respect to both Hunter's entitlement to benefits and Defendants' liability. [DE 20-8]. Thus, on January 3, 2023, the OWCP issued a pay order directing Defendants to begin providing monthly benefits to Hunter beginning January 2023 at a rate of $1,106.90 and to reimburse the Trust Fund for past benefits paid to Plaintiff, at that point totaling $48,649.60. [DE 204; DE 27-12]. However, prior to that letter, Defendants appealed the Benefits Review Board's decision to the Sixth Circuit Court of Appeals. [DE 20-19; DE 27-13]. While the appeal was pending, on August 8, 2023, Defendants reached an agreement with the DOL with respect to Hunter's claim and hundreds of other pending black lung benefits claims. [Mot. to Dismiss Appeal, DE 27-17; Agreement to Resolve Liability Dispute, DE 27-16]. Under the agreement, Defendants agreed to pay the DOL a lump sum of $72 million, and in exchange, the Trust Fund would pay all benefits owed by Defendants to claimants "now and in the future." [DE 27-16 at 1537–38]. The agreement further provided that Defendants would remain liable for auxiliary benefits in disputed claims, excluding auxiliary benefits in future disputed claims. [*Id.* at 1538]. The agreement defines "auxiliary benefits" as "[a]dditional compensation and [a]ttorney's [f]ees." [*Id.* at 1536]. Pursuant to the terms of the agreement, Defendants then moved to voluntarily dismiss its appeal with the Sixth Circuit. [DE 27-17]. On May 7, 2024, the Sixth Circuit granted the motion and remanded the case "to the District Director for initiation of payment under the settlement agreement with instructions

that any petitions for attorney fees or additional compensation under 33 U.S.C. § 914 (f) be

provided to counsel for [Defendants]." [Order Remanding, DE 27-18 at 1551].

Hunter states that "in May 2024, [he] was finally paid all the benefits he had been owed

since soon after the June 2021 computation letter through payments from the [Trust Fund]." [DE

20-1 at 106]. On July 1, 2024, Hunter's counsel wrote to the OWCP maintaining that, although the

Trust Fund paid Hunter past due benefits pursuant to the agreement with Defendants, Defendants

remained liable for "attorneys' fees, expenses, and other benefits that should be awarded[,]"

including "interest and penalties [Defendants] should pay for failing to pay Mr. Hunter's benefits

when they were due, within 40 days of the June 1, 2021 [computation of benefits]." [DE 27-20 at

1553]. Counsel therefore requested that the OWCP instruct Defendants "to pay the penalty and

interest contemplated in 20 C.F.R. Sections 725.607 and 725.608 . . . ." [*Id.*]. The letter further

stated that

> Since [Defendants were] liable for all benefits due until it reached its settlement in
> August 2023, . . . it should pay penalty and interest on all amounts owed through
> July 2023 and request that your office calculate that. The penalty should be 20% of
> all unpaid benefits. Mr. Hunter is entitled to these sums due to the significantly
> delayed payment on his benefits and as is clearly explained **in 20 C.F.R. Sections
> 725.607 and 725.608**.

[*Id.*]. On July 11, 2024, Defendants responded to Hunter's letter, asserting several defenses to

Hunter's request for additional compensation and interest. [DE 27-21]. Defendants argued, first,

that "[n]o request for any additional benefits was ever made following the decision of the Board

remanding this matter for payment under the settlement agreement[,]" so no "additional

compensation is appropriate." [*Id.* at 1588]. Defendants also noted that

> we are preserving whether the current statutory scheme and particularly any
> limitations on the appellate process of a responsible operator or its carrier would be
> a violation of due process. Additionally, in the recent Supreme Court decision in
> *SEC v. Jarkesy*, the court has held a federal agency (DOL) cannot enforce a civil
> penalty against Defendant Employer. It [sic] Attorney Vowels wants to seek

enforcement of this penalty; he must bring the action in federal court as the Court in *Jarkesy* held Defendant Employer is entitled to a jury trial.

[*Id.*]. On October 25, 2024, OWCP Claims Examiner Rose Douglas issued a determination (hereinafter, "October 25, 2024 computation of benefits") on Plaintiff's additional compensation request, finding that, under 20 C.F.R. § 725.607, "20% additional compensation is due in the amount of $12,122.00 ($60,610.00 X 20%)" because Defendants failed to pay benefits within 40 days of the initial request. [DE 27-22 at 1590]. Defendants responded to the determination, reiterating their disagreement with the finding. [DE 27-23].

On March 4, 2025, Hunter filed the instant action in this Court seeking: (1) enforcement of the 20 percent additional compensation assessed by the Claims Examiner in the amount of $12,122 [DE 1 at 6]; (2) payment of "interest on the additional compensation that has been owed but not paid as well as interest on all benefits Hunter did not collect when due" [*Id.* at 7]; and (3) payment of attorney's fees and litigation expenses incurred in seeking payment of penalty and interest. [*Id.* at 8].

B.  Statutory and Regulatory Framework

The Black Lung Benefits Act ("BLBA") was enacted by Congress in 1969 to provide benefits to coal miners or their surviving dependents for "death or total disability due to pneumoconiosis" arising out of work in coal mines. 30 U.S.C. § 901; *see also Island Creek Coal Co. v. Maynard on behalf of Maynard*, 87 F.4th 802, 807 (6th Cir. 2023). The BLBA "grants broad authority to the Secretary of Labor to implement its provisions." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 743 (6th Cir. 2019). Moreover, the BLBA incorporates the procedures set forth in the Longshore Harbor Workers' Compensation Act ("LHWCA"), while also permitting the Secretary of Labor to vary the LHWCA provisions by issuing regulations. 30 U.S.C. § 932(a); *Thacker on behalf of Estate of Clevenger v. Old Republic Ins. Co.*, 416 F. Supp. 3d 651, 660 (E.D.

Ky. 2019) ("33 U.S.C. § 921(d) is incorporated by reference into the BLBA."). Accordingly, claims brought under the BLBA are governed by a body of regulations and the claims processing rules of the LHWCA.

To receive benefits under the BLBA, an applicant "must show that (1) he or she is a miner (2) who suffers from pneumoconiosis (3) arising out of coal mine employment, which (4) contributes to (5) his or her total disability." *Zurich Am. Ins. Grp. v. Duncan*, 889 F.3d 293, 297 (6th Cir. 2018). After an applicant files a claim, a District Director for the OWCP "'investigates the claim and makes a preliminary determination of the miner's eligibility and' which operator (*i.e.*, former employer) is responsible for paying benefits." *Rice on behalf of Est. of Rice v. Bituminous Cas. Corp.*, 666 F. Supp. 3d 674, 682 (E.D. Ky. 2023) (quoting *Arch Coal, Inc. v. Hugler*, 242 F. Supp. 3d 13, 16 (D.D.C. 2017), *aff'd sub nom. Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018)); 20 C.F.R. § 725.401; 20 C.F.R. § 725.418(a). The proposed decision and order is "considered a final adjudication of a claim" only if no party requests a revision or a hearing within 30 days. 20 C.F.R. §§ 725.418–419. If a party does request a hearing within 30 days, the District Director "shall refer the claim to the Office of Administrative Law Judges." 20 C.F.R. § 725.419(a); *see also* 33 U.S.C. § 919(c), (d). The ALJ then conducts a formal hearing and issues a decision and order. 20 C.F.R. §§ 725.450–476. On the day of issuance, the ALJ must serve the decision and order on all parties and the Division of Coal Mine Workers' Compensation ("DCMWC") in Washington, D.C. 20 C.F.R. § 725.478. Upon receipt by the DCMWC, the order is considered "effective." *Id.*; 20 C.F.R. § 725.470 ("A decision and order shall become effective when filed in the office of the District Director, and unless proceedings for suspension or setting aside of such order are instituted within 30 days of such filing, the order shall become final at the

expiration of the 30th day after such filing." (citations omitted)). Under 20 C.F.R. § 725.502, benefits then become due

> after the issuance of an effective order requiring the payment of benefits by a District Director, administrative law judge, Benefits Review Board, or court, notwithstanding the pendency of a motion for reconsideration before an administrative law judge or an appeal to the Board or court, except that benefits shall not be considered due where the payment of such benefits has been stayed by the Benefits Review Board or appropriate court.

20 C.F.R. § 725.502(a)(1). That provision also once again emphasizes that "[a]n order issued by an administrative law judge becomes effective when it is filed in the office of the District Director." *Id.* § 725.502(a)(2). Within 30 days after the ALJ files the decision and order, a party may appeal the decision to the DOL's Benefits Review Board. 20 C.F.R. § 725.481. During an appeal, benefits remain "due after the issuance of an effective order" unless the "payment of such benefits has been stayed by the Benefits Review Board . . . ." 20 C.F.R. § 725.502(a)(1).

As part of the BLBA, Congress also created the Black Lung Disability Trust Fund, which provides compensation and medical benefits to miners disabled by black lung. 26 U.S.C § 9501. Under 26 U.S.C § 9501, the Trust Fund steps in and pays benefits when no responsible coal mine operator is identified or if the responsible operator fails to pay benefits within 30 days of the initial eligibility determination. 26 U.S.C § 9501(d)(1)(A)–(B). Additionally, 20 C.F.R. § 725.522 provides that "if an operator or carrier . . . fails or refuses to commence the payment of any benefits due pursuant to an effective order by a[n] . . . administrative law judge . . . the fund shall commence the payment of such benefits and shall continue such payments as appropriate." 20 C.F.R. § 725.522(a).

## II.     DISCUSSION

### A.  Motion for Extension of Time

#### 1.  Standard

FRCP 6(b)(1)(B) provides that a court may extend the time within which an act can be performed "on motion made after the time has expired if the party failed to act because of excusable neglect."  In determining whether such neglect was excusable, the Court balances five factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.  *See Nafzinger v. McDermott Int'l, Inc.,* 467 F.3d 514, 522 (6th Cir. 2006).

#### 2.  Analysis

Hunter filed his motion for summary judgment on October 15, 2025. [DE 20]. Defendants did not respond until December 19, 2025, when they filed a motion for an extension of time. [DE 26]. They then filed their response to the motion for summary judgment four days later—on December 23, 2025. [DE 27]. Defendants argue that their failure to respond "was owed to confusion on the part of Defendants' counsel as to the timing of the response deadlines in light of [the Court's amended general order holding in abeyance civil matters involving the United States as a party], the parties' mutual understanding that this case fell within the scope of the General Order, and the general stay of administrative proceedings in the DOL in place throughout the federal government shutdown." [DE 26 at 1395]. They state that "[t]he error came to counsel's attention while reviewing their file for case management purposes on December 18, 2025" and that, since that time, counsel has "worked diligently to ensure that a response brief is filed as soon as practicable . . . ." [*Id.*]. Hunter argues that any delay in this litigation prejudices him because it

may delay additional benefits he is entitled to, and that Defendants' justification for the delay is unreasonable. [DE 28 at 1612–13].

Applying the Sixth Circuit's five-factor test, the Court finds that the factors weigh in favor of granting the motion to extend. First, there is little danger of prejudice to Hunter in allowing the extension because the delay to litigation would have been minimal. The Court's scheduling order set a dispositive motion deadline of November 3, 2025, which would have allowed summary judgment briefing to extend into December 2025. The trial is set for April 13, 2026, so the parties still had ample time after Defendants filed their response to prepare. As a result, the first factor weighs in favor of granting the motion to extend.

Second, while Defendants' response was filed more than a month after the original deadline, Defendants worked diligently to correct the error and filed their response to the motion for summary judgment only four days after filing their motion for extension of time. *See La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, No. 3:16-CV-527-CRS, 2017 WL 472093, at *3 (W.D. Ky. Feb. 3, 2017) (granting motion for extension of time event though the "filing date was nearly one month after the original deadline for Defendant to respond to the discovery requests" because it was clear that "Defendant moved swiftly to correct the delay after becoming aware of its error"). Thus, the second factor likewise weighs in favor of permitting the extension.

Third, Defendants state that the reason for their delay was confusion as to the deadlines, given that the Court had issued amended General Order No. 25-13, which, due to the government shutdown, held in abeyance civil matters involving the United States as a party. [DE 26 a 1395]. It is not clear to the Court why an order holding in abeyance matters in which the United States is a party would be relevant here, where the United States is not a party to the case. Moreover, the

Court already rejected this reasoning in its order denying Defendants' earlier motion for an extension of time to complete fact discovery. [DE 25 at 1386]. Accordingly, the third factor weighs against Defendants.

Examining the fourth and fifth factors together, it is clear that the delay was within the reasonable control of Defendants, but there is nothing to suggest that Defendants did not act in good faith. While Defendants should have known that the Court's general order did not affect this case's proceedings, there is no evidence that this error was made with ill intent. Moreover, Defendants state that this error came to their attention "while reviewing their file for case management purposes on December 18, 2025." [DE 26 at 1395]. Defendants then filed their motion for extension of time the next day and filed their response four days after that. This suggests that the Defendants swiftly corrected the error after being made aware of it. Accordingly, while the fourth factor weighs against Defendants, the fifth factor weighs in their favor.

While Defendants' reason for the delay is questionable, on balance, the factors weigh in favor of allowing the extension of time, and the Court finds that Defendants' neglect is excusable. Overall, the delay will not significantly impact the judicial proceedings or prejudice Hunter, and there is nothing to suggest that Defendants acted in bad faith. Accordingly, the Court **GRANTS** Defendants' motion for an extension of time and will consider their response in ruling on the motion for summary judgment.

### B.  Motion for Summary Judgment

#### 1.  *Standard*

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute[.]" *Shreve v. Franklin Cnty.*, Ohio, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### 2. *Analysis*

Hunter's complaint asserts three causes of action: (1) payment of 20 percent additional compensation for Defendants' failure to pay benefits due pursuant to 20 C.F.R. § 725.607 and 33

U.S.C. § 914(f); that is, the $12,122 set forth in the claims examiner's October 25, 2024 letter [DE 1 at 6–7]; (2) payment of interest on the additional compensation as well as interest on all benefits Hunter did not collect when due pursuant to 20 C.F.R.§ 725.608(a)(3) and ; and (3) attorneys' fees and litigation expenses, pursuant to 33 U.S.C. § 928 and 20 C.F.R. §§ 725.367(a)(1), (4).

### i. 20 Percent Additional Compensation under 33 U.S.C. § 914(f) and 20 C.F.R. § 725.607

Hunter argues that "once the ALJ's award was filed with the District Director, an 'effective' order was in place that the Defendants had to heed." [DE 201- at 114]. Then, once the District Director issued the "[June 1, 2021] computation of benefits payable for periods prior to the effective date of the effective order," benefits became due. [*Id.* at 113]. Because the Defendants never paid benefits and the payments were instead made by the District Director from the Trust Funds, Defendants owe additional compensation under 33 U.S.C. § 914(f) and 20 C.F.R. § 725.607(a). [*Id.* at 114–15]. He argues that the "20% additional compensation that [he] is entitled to should be 20% of all that was due and unpaid as of the day before the settlement agreement in August 2023" because Defendants remained liable for payment during that time. [*Id.* at 116]. While Hunter's original complaint sought payment of the additional compensation as calculated by the claims examiner—that is, $12,122—he now maintains in his motion for summary judgment that the examiner "miscalculated this amount" and that the true amount owed totals to $17,003.90. [*Id.* at 116-17 n.4]. Defendants respond, first, that Hunter cannot enforce an award in excess of the claims examiner's assessment because the district court "has jurisdiction only to enforce a penalty award" not "conduct a *de novo* review of the amount of the award . . . ." [DE 27 at 1409]. Defendants next argue that the claims examiner's assessment violates separation of powers under *SEC v. Jarkesy* because it operates as a civil penalty and that the regulatory scheme that gave rise to the assessment violates Defendants' right to procedural due process. [*Id.* at 1409–10].

The first question the Court must address is whether, as a matter of law, Hunter is entitled to additional compensation amounting to 20 percent of any "unpaid benefits" pursuant to 33 U.S.C. § 914(f) and 20 C.F.R. § 725.607(a). Assuming Hunter is entitled to additional compensation, the Court must then determine the amount of "unpaid benefits" to which the 20 percent additional compensation must attach, and thus whether Hunter is entitled to the $12,122 originally calculated by the claims examiner, the $17,003.90 he now seeks on summary judgment, or some other amount.

a.  Entitlement to 20 Percent Additional Compensation

The LHWCA provides for the payment of "[a]dditional compensation for overdue installment payments" in certain circumstances. 33 U.S.C. § 914(f). Specifically, it provides that

> [i]f any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in section 921 of this title and an order staying payment has been issued by the Board or court.

*Id.* Consistent with that language, the Secretary of Labor promulgated 20 C.F.R. § 725.607, which provides as follows:

> (a) If any benefits payable under the terms of an award by a District Director (§ 725.419(d)), a decision and order filed and served by an administrative law judge (§ 725.478), or a decision filed by the Board or a U.S. court of appeals, are not paid by an operator or other employer ordered to make such payments within 10 days after such payments become due, there will be added to such unpaid benefits an amount equal to 20 percent thereof, which must be paid to the claimant at the same time as, but in addition to, such benefits, unless review of the order making such award is sought as provided in section 21 of the LHWCA and an order staying payments has been issued.

20 C.F.R. § 725.607(b) provides that the eligible claimant is still entitled to receive this "additional compensation" even if benefit payments were made by the Trust Fund. Finally, the regulation

provides that the Trust Fund "may not be held liable for payments of additional compensation under any circumstances." 20 C.F.R. § 725.607(c).

"To determine whether any additional compensation is owed under 33 U.S.C. § 914(f) and 20 C.F.R. § 725.607, the Court must first determine when Plaintiff's benefits became due." *Thacker*, 416 F. Supp. 3d at 657. "Black lung benefits are due thirty days after two conditions are fulfilled: (1) an effective compensation order has been issued; and (2) the District Director computes the amount of benefits payable and provides notice to the parties." *Id.*; *see also* 20 C.F.R. § 725.502(b)(2) ("Within 30 days after the issuance of an effective order requiring the payment of benefits, the District Director shall compute the amount of benefits payable . . . and shall so notify the parties. . . . Benefits and interest payable for such periods shall be due on the thirtieth day following issuance of the District Director's computation."). 33 U.S.C. § 919 defines a "compensation order" as "[t]he order rejecting the claim or making the award." Moreover, the regulations explain that orders issued by ALJs become "effective" when they are filed in the office of the District Director. 20 C.F.R. §§ 725.502(a)(2), 725.479.

Here, the ALJ's May 24, 2021 order was a compensation order because it was an order "making the award." *See Thacker*, 416 F. Supp. at 659. Additionally, ALJ decisions and orders such as this are regularly found to be compensation orders under the BLBA. *See id.* (collecting cases). The order was filed that same day in the office of the District Director, [DE 20-14 at 1270], as a result it became effective on May 24, 2021 pursuant to 20 C.F.R. § 725.502(a)(2) and § 725.479. Thereafter, on June 1, 2021, the District Director issued the computation of benefits and notified the parties, in compliance with the thirty-day period set forth in 20 C.F.R. § 725.502(b)(2). Defendants did not obtain a stay of payment, so benefits became due thirty days later—on July 1,

2021. *See* 20 C.F.R. § 725.502(b)(2) ("Benefits and interest payable for such periods shall be due on the thirtieth day following issuance of the District Director's computation.").

33 U.S.C. § 914(f) and 20 C.F.R. § 725.607 both provide that 20 percent additional compensation is owed when the compensation awarded is not paid by the operator or employer within ten days after it becomes "due," unless the order making such award is being reviewed under 33 U.S.C. § 921 and an order staying payments has been issued by the Benefits Review Board or Court. 33 U.S.C. § 914(f); 20 C.F.R. § 725.607(a). Here, the record establishes that Defendants failed to pay benefits within ten days after they became due, and Defendants acknowledge that they refused to pay benefits while their various appeals were pending. [*See* DE 27 at 1399–40 (explaining that "the Trust Fund continued to pay Plaintiff his interim disability benefits" during Defendants' appeal of the ALJ decision and appeal of the Benefits Review Board decision); DE 20-11]. Defendants do not dispute that they failed to make payments within ten days. Moreover, although Defendants sought review of the order, they offer no evidence that "an order staying payments" was issued. Accordingly, because Defendants did not commence payment within ten days of when the payments became due or obtain an order staying payment, they owe 20 percent additional compensation on the award to Hunter. *See Thacker*, 416 F. Supp. 3d at 660; *Byrge on behalf of Est. of Byrge v. Premium Coal Co. Inc.*, 301 F. Supp. 3d 785, 798 (E.D. Tenn. 2017) ("Defendants were required to start paying benefits because the ALJ's Order became effective and they did not receive, let alone request, a stay of the ALJ's decision granting benefits.").

Hunter is entitled to this additional compensation under the BLBA despite receiving payments from the Trust Fund during the pendency of Defendants' appeal. 20 C.F.R. § 725.607 makes this clear:

> If, on account of an operator's or other employer's failure to pay benefits as provided in paragraph (a) of this section, benefit payments are made by the fund, the eligible claimant will nevertheless be entitled to receive such additional compensation to which he or she may be eligible under paragraph (a), with respect to all amounts paid by the fund on behalf of such operator or other employer.

20 C.F.R. § 725.607(b); *see also Thacker*, 416 F. Supp. 3d at 668 ("[I]f an operator or employer fails to pay benefits within ten days after they have become due and the Trust Fund makes those payments, an eligible claimant is still entitled to receive additional compensation on the amounts paid by the Trust Fund."); *Nowlin v. E. Associated Coal Corp.*, 331 F. Supp. 2d 465, 474 (N.D. W. Va. 2004) ("To avoid the penalty, the benefits must be paid 'by an operator or other employer.'" (quoting 20 C.F.R. § 725.607(a))).

Defendants do not dispute any of the facts that give rise to the Court's conclusion that Hunter is owed additional compensation under 33 U.S.C. § 914(f) and 20 C.F.R. § 725.607. Rather, they argue that the entirety of the regulatory scheme that resulted in the additional compensation is unconstitutional. [DE 27 at 1409]. First, they argue that the 20 percent additional compensation is a civil penalty imposed through administrative proceedings in violation of the Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109, 144 (2024). [*Id.*]. They state that "[i]n *Jarkesy*, the Supreme Court held that agencies may not impose civil penalties through administrative proceedings without Article III adjudication and a jury right" and that the additional compensation ordered by OWCP under 20 C.F.R. § 725.607 is a civil penalty issued without judicial oversight. [*Id.* at 1409–10].

In *Jarkesy*, the Supreme Court considered whether the SEC's use of administrative proceedings to assess civil monetary penalties for alleged securities violated the respondents' right to a jury trial under the Seventh Amendment. *Jarkesy*, 603 U.S. at 120. The Court applied the two-part test from *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 109 (1989) and found, that "[t]he

16

SEC''s antifraud provisions replicate common law fraud, and it is well established that common law claims must be heard by a jury." *Id.* at 120; *see also Granfinanciera*, 492 U.S. at 42 ("First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." (quoting *Tull v. United States*, 481 U.S. 412, 417–418 (1987))). The Court noted that the SEC's fraud provisions "target the same basic conduct as common law fraud, employ the same terms of art, and operate pursuant to similar legal principles," and thus, these actions involve a matter of private right that Congress could not withdraw "'from judicial cognizance.'" *Id.* at 134 (citations omitted) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)). As to the second prong, the Court explained that the SEC sought civil penalties, which constituted a "prototypical common law remedy." *Id.* at 123. The Court also distinguished its holding from *Atlas Roofing Co. v. Occupational Safety and Health Review Commission*, 430 U.S. 442 (1977), which "concluded that Congress could assign the OSH Act adjudications to an agency because the claims were 'unknown to the common law.'" *Jarkesy*, 603 U.S at 138 (quoting *Atlas Roofing*, 430 U.S. at 461). That is, the safety standards established by the OSH Act and related regulations did not "reiterate common law terms of art" and "instead resembled a detailed building code," so actions brought under those regulations were not "'in the nature of' a common law suit." *Id.* at 137–38 (quoting *Atlas Roofing*, 430 U.S. at 453).

Defendants argue only that the claims examiner's assessment of the additional compensation is a civil penalty, and therefore that the proceedings are unconstitutional under *Jarkesy*. [DE 27 at 1409–10]. They do not suggest that the case involves traditional common law claims, and they do not confront *Jarkesy*'s distinction between *legal* monetary remedies, which are "designed to punish or deter the wrongdoer," and *equitable* monetary remedies, which are

designed to "'restore the status quo.'" *Jarkesy*, 603 U.S at 123 (quoting *Tull*, 481 U.S. at 422). Defendants' argument "takes too simple of an approach to legal rights and remedies" because it suggests that any award of monetary relief is necessarily legal relief. *Millennia Hous. Mgmt. v. United States Dep't of Hous. & Urb. Dev.*, 783 F. Supp. 3d 1051, 1067 (N.D. Ohio 2025); *Curtis v. Loether*, 415 U.S. 189, 196 (1974) ("We need not, and do not, go so far as to say that any award of monetary relief must necessarily be 'legal' relief."). *Jarkesy* makes clear that the Seventh Amendment is only implicated if the monetary damages sought are designed to punish a defendant, rather than to serve a remedial purpose. *See Jarkesy*, 603 U.S at 122–23 (explaining that the Seventh Amendment "extends to a particular statutory claim if the claim is 'legal in nature'" and a remedy is legal in nature "if it is designed to punish or deter the wrongdoer"). Defendants assume, without argument or explanation, that the 20 percent "additional compensation" provided for in 20 C.F.R. § 725.607 is designed to punish. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)). The Court therefore declines to accept Defendants' perfunctory assertion that the compensation provided for in 20 C.F.R. § 725.607 operates as a civil penalty.

Moreover, the history surrounding the "additional compensation" provision suggests that its purpose is remedial as opposed to punitive. The title of 20 C.F.R. § 725.607 was changed from "in addition to compensation" to "additional compensation" "to eliminate any possibility that the regulation's phrasing could confuse readers" and to ensure that the provision is not "read to suggest that 14(f) payments are something other than compensation." Black Lung Benefits Act: Disclosure

of Medical Information and Payment of Benefits, 80 Fed. Reg. 23743 (proposed April 29, 2015) (codified at 20 C.F.R. § 725). In the final rule, the OWCP noted that this change "reflects the Director's view, as well as the view of the majority of courts that have considered the issue, that payments made under Longshore Act section 14(f) are compensation rather than penalties." Black Lung Benefits Act: Disclosure of Medical Information and Payment of Benefits, 81 Fed. Reg. 24464 (April 26, 2016) (codified at 20 C.F.R. § 725). Courts that have considered the issue have likewise found that the "additional compensation" provided for in § 725.607 is compensation rather than a penalty. *See Newport News Shipbuilding and Dry Dock Co. v. Brown*, 376 F.3d 245, 251 (4th Cir. 2004) ("[I]t is plain that an award for late payment under § 14(f) is compensation."); *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 953-54 (9th Cir. 2007) (same); *Ingalls Shipbuilding, Inc. v. Dalton*, 119 F.3d 972, 977–78 (Fed. Cir. 1997) ("If Congress had intended that payments under [§ 914] be treated as fines or penalties, it would surely have done so by referring to them as such or would have directed these payments to the special fund."). This conclusion aligns with the broader organization and text of 20 C.F.R § 725 and the LHWCA, which contain several other provisions that specifically characterize a monetary award as a "penalty" or "fine." *See Ingalls Shipbuilding*, 119 F.3d at 977 (listing these provisions, which include, for example, the "'civil *penalty* not to exceed $10,000' for knowingly or willfully failing to send injury report to the Secretary," *see* 33 U.S.C. § 930(e)); *Newport News Shipbuilding*, 376 F.3d at 249 ("When the LHWCA's broad definition of compensation is read with the language of § 14(f), and the Act's structural differentiation between compensation and penalties is taken into account, it is reasonably clear that a § 14(f) late payment award to an employee is compensation.").

In *Jarkesy*, the Court explained that "the civil penalties in this case are designed to punish and deter, not to compensate," and because of this, the penalties are "'a type of remedy at common

law that could only be enforced in courts of law.'" 603 U.S at 123 (quoting *Tull*, 481 U.S. at 422). That conclusion "effectively decide[d] that [the] suit implicate[d] the Seventh Amendment right, and that a defendant would be entitled to a jury on these claims." *Id.* The action at issue here is distinguishable from the SEC's antifraud enforcement action at issue in *Jarkesy* because the "additional compensation" is designed to compensate, not to "punish and deter." The distinction disposes of Defendants' argument because an action for an equitable remedy does not "implicate[] the Seventh Amendment." *See id.*

Defendants also contend that "[s]eparately, the regulatory scheme as applied violates Defendants' right to procedural due process." [DE 27 at 1410]. They argue that [f]orcing an employer to pay benefits, penalties, and attorney's fees" when an order is "effective" but not yet "final" deprives the employer of property without due process of law and "functions as an unconstitutional taking." [*Id.*]. Once again, Defendants make no attempt to elaborate on this argument or apply the traditional elements of a procedural due process claim. *See Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012) ("The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process."). Assuming that Defendants take issue with the amount of process they were afforded before being required to make payment, that argument fails. It is well-established that due process requires that the government "provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). Typically, when assessing whether an administrative procedure satisfies the constitutional requirements of due process, the court applies the three-part test from *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk
> of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976). As already explained, Defendants were afforded a hearing before the ALJ. Only after that hearing did the ALJ file its order with the District Director, making the order "effective" and imposing a payment obligation on Defendants. In other words, Defendants were afforded a pre-deprivation hearing, so the risk of an "erroneous deprivation" is minimal. *See Johnson v. Morales*, 946 F.3d 911, 924 (6th Cir. 2020) (explaining the general requirement that the state provide some kind of process before depriving a person of property and noting that failure to provide a pre-deprivation hearing is not a *per se* due process violation). Procedures much less thorough than the one at issue here have been found not to be due process violations. *See, e.g.*, *Mathews*, 242 U.S. at 348 (no due process violation when Social Security disability payments were terminated prior to evidentiary hearing). Moreover, in cases where a "preliminary decision by an agency is a step in an administrative proceeding," the Supreme Court has "repeatedly held that no hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective." *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 598 (1950). Here, a hearing was held, and Defendants were given an opportunity to be heard before the order became effective. Defendants point to no authority that supports their contention that it is a due process violation to require payment pursuant to an effective order issued *after* a full administrative hearing has taken place. Nor do they explain what additional process they should be entitled to or how additional procedures would lessen the risk of an erroneous deprivation. As a result, the Court sees no procedural due process violation.

Accordingly, the Court rejects Defendants' arguments against the 20 percent "additional compensation" permitted by the plain language of 20 C.F.R. § 725.607(a). The record establishes

that benefits were not paid by Defendants within ten days after the payments became due and that no order staying payments was issued, so additional compensation is required under 20 C.F.R. § 725.607(a) and 33 U.S.C. § 914(f). There is therefore no genuine dispute as to any material fact and Hunter is entitled to judgment as a matter of law with respect to whether he is owed 20 percent additional compensation.

### b.  Amount of Unpaid Benefits

Having concluded that Hunter is entitled to receive additional compensation as a matter of law, the Court next must determine the amount of "unpaid benefits" on which the 20 percent monetary award must be assessed. *See* 20 C.F.R. § 725.607(a) (requiring a penalty equal to 20 percent of "unpaid benefits"). The claims examiner found that the unpaid benefits amounted to $60,610 and therefore that the additional compensation owed was 20 percent of that amount— $12,122. [DE 20-18]. This unpaid benefits amount resulted from adding two numbers: (1) $22,649.20: the outstanding benefits owed to Hunter for the months between the date that Hunter filed his original claim for benefits—March 2017—and the date that the OWCP issued its preliminary determination that Hunter was entitled to benefits—January 2019; and (2) $37,960.80: the "monthly benefits paid after the effective award"—that is, the outstanding benefits owed to Hunter for the months after the date that the ALJ's award became effective in May 2021 and before the date that Hunter was finally paid by the Trust Fund in May 2024.[1] [DE 20-18 at 1325–26].

Hunter now claims that the true amount of unpaid benefits is $85,019.49, so he is owed 20 percent of that amount—$17,003.90. [DE 20-1 at 116]. The $85,019.49 figure, unlike the $60,610 figure, results from "all that was due and unpaid as of the day before the settlement agreement in August 2023." [*Id.* at 116]. Hunter apparently agrees with the first figure used by the claims

---

[1] This number therefore includes benefits beginning with June 2021 and ending with April 2024. [DE 20-18 at 1326].

examiner to determine unpaid benefits—the $22,649.20 for benefits from March 2017 through January 2019. Yet the rest of his calculation differs in two respects. First, he contends that the amount of unpaid benefits should include *all* benefits owed by Defendants—including those owed as reimbursement to the Trust Fund and the DOL—not just those owed to Hunter. [DE 20-1 at 115–16]. Thus, in his calculation of unpaid benefits, he also includes the following benefits owed pursuant to the June 1, 2021 computation of benefits: (1) the $28,607.20 Defendants owed to the Trust Fund for interim benefits paid to Hunter from February 2019 through May 2021; (2) the $2,508.04 Defendants owed to the DOL for diagnostic testing and travel; and (3) the $4,571.25 Defendants owed to the DOL for medical treatment incurred. [*Id.* at 116; DE 20-3 at 130]. Second, his calculation includes monthly benefits Defendants owed to Hunter only up through June 2023, not through April 2024. [DE 20-1 at 116]. This is because Defendants stopped being liable for payments when the settlement agreement was reached in August 2023. [*Id.*]. Accordingly, Hunter states that he is entitled to "20% of all that was due and unpaid as of the day before the settlement agreement in August 2023," which includes monthly payments from June 2021 to June 2023.[2] [*Id.*].

    As a threshold matter, the Court must address Defendants' argument that the Court cannot enforce a monetary award in excess of the claims examiner's assessment in the October 25, 2024 computation of benefits. [DE 27 at 1408]. Defendants argue that the district court only has jurisdiction to *enforce* an award, not to conduct a *de novo* review of the amount of the award. [*Id.* at 1409]. Defendants cite to the following language from *Templeton v. Appolo Fuels, Inc.*:

> Notably, the Court has a cabined role under § 921(d), that of enforcement. The statute directs scrutiny of whether the compensation order "was made and served in accordance with law." If so, and if the employer and its agents have not complied, enforcement is a mandate. Thus,

---

[2] Hunter's calculation ends with the June 2023 payment because that payment was due in July 2023, and the Defendants were no longer liable for payment come August 2023. [DE 20-1 at 116].

> It is clear from the statutory scheme that our enforcement powers under [section] 921(d) . . . are not of substantive dimension. That is to say [section] 921(d) reposes in this court the responsibility of screening compensation orders for procedural defects and thus affording responsible employers a measure of procedural due process before enforcement can be effected.

> *Marshall v. Barnes & Tucker Co.*, 432 F. Supp. 935, 939 (W.D. Pa. 1977); *see also Grimm v. Vortex Marine Constr.*, 921 F.3d 845, 847 (9th Cir. 2019) (noting that the statute gives district courts no jurisdiction "over the merits of the litigation," that a district court "cannot affirm, modify, suspend, or set aside the order" but that "jurisdiction extends only to the enforcement of compensation orders") (quoting *Thompson v. Potashnick Const. Co.*, 812 F.2d 574, 576 (1987)).

525 F. Supp. 3d 802, 807 (E.D. Ky. 2021). The LHWCA, as incorporated into the BLBA via 30 U.S.C. § 932(a), gives district courts jurisdiction to enforce "compensation order[s]." 33 U.S.C. § 921(d). The LHWCA defines a "compensation order" as "[t]he order rejecting the claim or making the award." 33 U.S.C. § 919(e). As stated *supra*, the ALJ order is the "compensation order" in this case. *See Templeton*, 525 F. Supp. 3d at 809 ("An ALJ decision and order qualifies as a 'compensation order.'"); *Thacker*, 416 F. Supp. 3d at 659 (stating that the order "fits squarely within the definition of compensation order provided by 33 U.S.C. § 919(e) as it is an order 'making the award'"). Accordingly, when the *Templeton* court spoke of the district court's jurisdiction to enforce—but not modify—orders, it referred to the district court's authority to enforce the ALJ's compensation order. The October 25, 2024 computation of benefits owed under 33 U.S.C § 914(f) and 20 C.F.R. § 607, however, is not a "compensation order." Rather, it is a letter containing a computation of additional compensation due "based on the final award of benefits." [DE 20-18 at 1324].

Moreover, failure to comply with an effective compensation order automatically triggers the 20 percent additional compensation under 20 C.F.R. § 607. *See Thacker*, 525 F. Supp. 3d at 662 ("[S]everal courts have described the operation of § 914(f) as self-executing or automatic in

the BLBA context."); *see also Burton v. Drummond Co. Inc.*, 350 F. Supp. 3d 1198, 1204 (N.D. Ala. 2018) (explaining that failure to pay compensation within ten days after it became due automatically added to such compensation "'an amount equal to 20 [percent] thereof'" (alteration in original) (quoting 33 U.S.C. § 914(f))); *Byrge*, 301 F. Supp. 3d at 797 (describing the additional compensation under § 914(f) as "self-executing"); *Hudson v. Pine Ridge Coal Co.*, LLC, No. CIV.A. 2:11-00248, 2012 WL 386736, at *6 (S.D.W. Va. Feb. 6, 2012) ("A right to section 14(f) compensation arises automatically when the above conditions are met—that is, no additional award or order is required. A beneficiary entitled to such compensation may seek district court enforcement under 33 U.S.C. § 921(d)."). Because the Court has jurisdiction to enforce the ALJ's compensation order, it has authority to enforce the automatic 20 percent additional compensation that comes with the order. By coming to its own conclusion as to the amount of "additional compensation" owed, the Court is not *modifying* an existing order, but simply carrying out a provision that is automatically triggered by way of that order. Put another way, if the claims examiner had not issued the October 25, 2024 computation of benefits calling for additional compensation under 33 U.S.C. § 914(f) and 20 C.F.R. § 725.607, the Court would certainly have the authority to determine the amount of additional compensation owed by Defendants, as many other courts have. *See, e.g.*, *Thacker*, 416 F. Supp. 3d at 669 (finding that the court had jurisdiction to consider plaintiff's claim for additional compensation and awarding additional compensation "despite the District Director's failure to indicate that such compensation was owed" in the computation of benefits); *Byrge*, 301 F. Supp. 3d at 797 (finding that the plaintiff could proceed with his lawsuit seeking additional compensation and granting summary judgment to plaintiff on the amount sought even though the computation of benefits did not provide for additional compensation). The fact that the claims examiner did provide such a computation does not change

the Court's authority to consider the appropriate amount of the award. Accordingly, the Court will determine the appropriate amount of "unpaid benefits" to which the 20 percent must attach.

20 C.F.R. § 725.607 provides that "[i]f *any* benefits payable under the terms of . . . a decision and order . . . by an administrative law judge . . . are not paid by an operator or other employer" within ten days after payment becomes due, "there will be added to such unpaid benefits an amount equal to 20 percent thereof." 20 C.F.R. § 725.607(a) (emphasis added). That is, the rule speaks of "any" benefits owed under an order, not only benefits owed to the plaintiff. Moreover, it is typical for reimbursement owed to the Trust Fund for benefits paid to claimants to be included in the unpaid benefits calculation. *See, e.g.*, *Thacker*, 416 F. Supp. 3d at 659 (awarding additional compensation based on 20 percent of $40,813.40—the amount defendant owed in reimbursement payments to the Trust Fund); *Vialpando v. Chevron Mining, Inc.*, No. 18-251-BRB-SCY, 2018 WL 5017754, at *5 (D.N.M. Oct. 16, 2018) ("Under the plain language of section 725.607(b), [plaintiff] is entitled to additional compensation for benefits payments made by the fund if [defendant] failed to pay those payment once they became due.); *Rice*, 666 F. Supp. 3d at 688 (including in "unpaid benefits" calculation the $12,500.70 interim benefits paid by the Trust Fund to plaintiff).

Here, the "unpaid benefits" should therefore include benefits Defendants owed to the Trust Fund and the Department of Labor. These include: (1) the $22,649.20 owed to Hunter for the period of March 2017 to January 2019; (2) the $28,607.20 owed to the Trust Fund as reimbursement for interim benefits paid to Hunter from February 2019 through May 2021; (3) the $2,508.04 owed to the DOL as reimbursement of the cost of diagnostic examinations and travel incurred in the development of medical evidence; (4) the $4,571.25 owed to the DOL as reimbursement for the cost incurred in medical treatment of Hunter's condition; and (5) the

$26,683.80 in monthly benefits Defendants owed to Hunter from June 2021 through June 2023,[3] when the settlement agreement relieved Defendants of Liability.[4] [DE 27-8 at 1479]. Collectively, these amount to $85,019.49 in unpaid benefits. Defendants owe Hunter 20 percent of that amount as additional compensation: $17,003.90.

Notably, Defendants do not challenge any of these dollar amounts, and the factual record presented by Defendants is largely the same as that presented by Hunter. Defendants' only objections to summary judgment in Hunter's favor are those jurisdictional and constitutional arguments the Court has already addressed. Having rejected those arguments, and without any apparent dispute of fact as to the amounts owed, the Court finds that summary judgment is appropriate on Hunter's claim for additional compensation and orders Defendants to pay $17,003.90 in accordance with 33 U.S.C. § 914(f) and 20 C.F.R § 725.607.

### ii. Interest

Hunter argues that he is entitled to interest on the unpaid $17,003.90 pursuant to 20 C.F.R. § 725.608(a)(3). [DE 20-1 at 117]. He states that interest began to accrue on July 1, 2021 for the benefits Defendants owed at that time, while interest began accruing on subsequent monthly payments Defendants owed on the 15th day of the month after the payment month. [DE 20-1 at 118]. He also states that "[f]ollowing judgment regarding interest on the penalties which is still accruing, the interest due can be worked out among the parties with final guidance from the Court

---

[3] Defendants owed Hunter benefits for June 2021 through December 2021 at a rate of $1,040.40 per month; for January 2022 through December 2022 at a rate of $1,063.30 per month; and for January through June 2023 at a rate of $1,106.90 per month. [DE 20-18 at 1326]. This totals to $26,683.80.
[4] Hunter correctly notes that "[t]he 20% additional compensation that Hunter is entitled to should be 20% of all that was due and unpaid as of the day before the settlement agreement in August 2023." [DE 20-1 at 116]. This is because the settlement agreement relieved Defendants of liability for the payments after Defendants made a lump sum payment to the DOL. [DE 27-16 at 1537–38]. Accordingly, the October 25, 2024 computation of benefits erroneously held Defendants liable for payment up through April 2024. [DE 20-18 at 1326].

or, if necessary, litigated before the Court after the penalties are paid and the interest stops accruing." [DE 20-1 at 119, 121].

Pursuant to 20 C.F.R. § 725.608(a)(3), "[i]n any case in which an operator is liable for the payment of additional compensation (§ 725.607), the beneficiary shall also be entitled to simple annual interest computed from the date upon which the beneficiary's right to additional compensation first arose." 20 C.F.R. § 725.608(a)(3). "A plaintiff's simple annual interest begins accruing on the same day the right to additional compensation accrues, thus the eleventh day after the first payment was due." *Rice*, 666 F. Supp. 3d at 689 (citing *Thacker*, 416 F. Supp. 3d at 670); *see also* 20 C.F.R § 725.607(a) (entitling claimant to additional compensation if payment is not made "within 10 days after such payments become due").

As already discussed, Hunter's benefits became due on July 1, 2021. Hunter contends that interest on the 20 percent additional compensation began to accrue on July 10, 2021. [DE 20-1 at 117]. Yet, under the language of 20 C.F.R § 725.607(a), the right to additional compensation arises if payment is not made within ten days *after* the payment becomes due. Accordingly, Hunter's entitlement to additional compensation arose on July 12, 2021 —the eleventh day after the benefits awarded became due. Thus, Hunter is entitled to simple annual interest on the additional compensation beginning on July 12, 2021. *See Rice*, 666 F. Supp. 3d at 689.

Defendants argue that Hunter is barred from recovering interest on benefits paid by the Trust Fund and cite to 20 C.F.R. § 725.608(b), which provides that

> "[i]f an operator or other employer fails or refuses to pay any or all benefits due pursuant to an award of benefits or an initial determination of eligibility made by the District Director and the fund undertakes such payments, such operator or other employer shall be *liable to the fund* for simple annual interest on all payments made by the fund for which such operator is determined liable, computed from the first date on which such benefits are paid by the fund, in addition to such operator's liability to the fund, as is otherwise provided in this part. *Interest payments owed pursuant to this paragraph shall be paid directly to the fund.*

20 C.F.R. § 725.608(b) (emphasis added). Defendants maintain, with no support, that § 725.608(a) is "largely inapplicable to this case," and that instead only § 725.608(b) applies. [DE 27 at 1411]. Yet, § 725.608(a) and § 725.608(b) simply govern interest on payments on different amounts to different entities. § 725.608(a)(3) governs the payment of interest on additional compensation that an employer owes to a beneficiary under § 725.607. § 725.608(b), on the other hand, governs an employer's payment to the Trust Fund of interest on "all payments made by the fund." It is therefore possible for an employer to be required to pay interest under both of these provisions— to the beneficiary under § 725.608(a)(3) *and* to the Trust Fund under § 725.608(b). *See Byrge*, 301 F. Supp. 3d at 802 (noting that plaintiff was entitled to interest on the additional compensation pursuant to § 725.608(a)(3) but not entitled to interest on payments that the Trust Fund paid under § 725.608(b)). § 725.608(a) is clearly applicable here, where the Court has found Defendants to be "liable for the payment of additional compensation." *See* § 725.608(a)(3).

Under the plain language of 20 C.F.R. § 725.608(a)(3), Hunter is entitled to interest on the additional compensation owed—that is, the $17,003.90—beginning on July 12, 2021. However, given that interest is still accruing, the Court cannot effectively calculate the amount of interest owed at this time. The Court therefore grants Hunter's motion for summary judgment on this claim only as to his entitlement to interest and directs the parties to confer and seek agreement on the final amount of interest owed. *See Thacker*, 416 F. Supp. 3d at 670 (directing the parties to "work together to resolve the interest issue"); *Rice*, 666 F. Supp. 3d at 689 (directing the parties to "confer on and seek agreement on this final computation"). Accordingly, the parties shall jointly file a report of the agreed interest amount within 21 days after entry of this Order. If the parties cannot settle the issue, they may file for additional relief in the Court. Once the issue of the amount of interest is resolved, the Court will enter a judgment consistent with this order.

### iii. Attorney's Fees and Litigation Expenses

Hunter also moves for summary judgment with respect to his claim for attorney's fees and litigation expenses under 33 U.S.C. § 928 and 20 C.F.R. § 725.367. [DE 20-1 at 122]. He argues that claimants who have successfully pursued black lung claims are entitled to attorney's fees commensurate with the necessary work done, and that 20 C.F.R. § 725.367 provides that the responsible operator shall be responsible for such fees. [DE 20-1 at 122]. Defendants argue that the issue of attorney's fees is premature because recovery of such fees "is conditional on [Hunter] prevailing on some portion of his claims and subject to the Defendants' Rule 68 Offer of Judgment." [DE 27 at 1413].

The LHWCA, incorporated into the BLBA at 30 U.S.C § 932(a), provides that "there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer. . . ." 33 U.S.C. § 928(a). "Although litigants generally must pay their own attorneys' fees in the absence of explicit statutory authorization, Congress has provided a fee-shifting mechanism for use in black lung cases." *Lance Coal Corp. v. Caudill*, 655 F. App'x 261, 262 (6th Cir. 2016) (quoting *E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 569 (4th Cir. 2013)); *see also Day v. James Marine, Inc.*, 518 F.3d 411, 414 (6th Cir. 2008) (noting that fee awards are "mandatory" under 33 U.S.C. § 928). Accordingly, a claimant's attorney is entitled to fees and costs under the statute upon "the successful prosecution of his claim" following an employer's refusal to pay. 33 U.S.C. § 928(a). Moreover, 20 C.F.R. § 725.367 provides that the successful claimant can collect those fees "from the responsible operator that is ultimately found liable for the payment of benefits . . . ." 20 C.F.R. § 725.367(a). Because Hunter was successful in his prosecution of a claim for benefits against Defendants, his attorney is entitled to collect reasonable attorney's fees and costs from Defendants.

*See Lance*, 655 F. App'x at 261–63 (granting motion for attorney's fees when there was an ALJ order in place awarding black lung benefits to claimant and that order had been affirmed by the Benefits Review Board).

> Under the applicable regulations, attorneys' fees awarded in black lung benefits cases must:
>
> be reasonably commensurate with the necessary work done and shall take into account the quality of the representation, the qualifications of the representative, the complexity of the legal issues involved, the level of proceedings to which the claim was raised, the level at which the representative entered the proceedings, and any other information which may be relevant to the amount of fee requested.

20 C.F.R. § 725.366(b). The regulations also provide that "the amount of reasonable and unreimbursed expenses incurred in establishing the claimant's case" shall be added to the fee. 20 C.F.R. § 725.366(c). For BLBA claims, the Sixth Circuit uses the lodestar method of calculating attorney's fees, under which "a 'fee amount [equal to] the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' is the 'appropriate starting point' for calculating attorneys' fees . . . ." *Lance*, 655 F. App'x at 262 (quoting *B & G Mining, Inc. v. Dir., Off. of Workers' Comp. Programs*, 522 F.3d 657, 661–62 (6th Cir. 2008)). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *B & G Mining*, 522 F.3d at 663 (quoting *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007)).

While Hunter is entitled to reasonable attorney's fees and costs paid by defendants, there remains a dispute of fact as to the amount of those fees and costs. Hunter himself even acknowledges that the amount he requests may not reflect the final amount. [DE 20-1 at 126 (requesting attorney's fees and costs in the amount of $12,777.46 but noting that "this amount may continue to grow with further action needed from the Undersigned's office in this case").

Accordingly, while the Court finds that Hunter is entitled to reasonable attorney's fees and costs under 33 U.S.C. § 928(a) and 20 C.F.R. § 725.366, it is unable to grant summary judgment at this time on the particular amount requested by Hunter. This is because Hunter requests attorney's fees not only for the underlying OWCP action but also for this action, which is still pending. *See Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138 (6th Cir. 1996) ("Typically, attorney's fees are collateral to the merits and are awarded only after the entry of judgment." (citing Fed. R. Civ. P. 54(d)(2)(B)). After the parties resolve the interest amount, Hunter may file a renewed motion for attorney's fees and litigation expenses, provided the parties do not themselves come to an agreed amount.

Accordingly, the Court grants Hunter's motion for summary judgment as to his entitlement to attorney's fees and costs paid by Defendants, but denies summary judgment as to the specific amount requested by Hunter.

### III.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

(1) Defendants' motion for extension of time [DE 26] is **GRANTED**;

(2) Hunter's motion for summary judgment [DE 20] is **GRANTED IN PART**;

(3) Defendants **SHALL** pay Hunter $17,003.90 in additional compensation pursuant to 20 C.F.R. § 725.607(a) and 33 U.S.C. § 914(f);

(4) The parties **SHALL** confer on the final interest due, pursuant to the Court's finding that Hunter is owed interest on the $17,003.90 additional compensation under 20 C.F.R. § 608(a)(3);

(5) The parties **SHALL** jointly file a report of the final interest payment within **21 days** after entry of this Order. If the parties cannot agree, they shall file separate calculations; and

(6) Hunter's request for attorney's fees in the amount of $12,777.46 is **DENIED** without

prejudice.

Rebecca Grady Jennings, District Judge

United States District Court

February 19, 2026