UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| BARRY HUNTER | Plaintiff |
| v. | Civil Action No. 4:25-cv-20-RGJ |
| PEABODY ENERGY, ET AL. | Defendants |

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendants Peabody Coal Company, LLC, and Peabody Energy Corporation (collectively, "Defendants") move for relief from summary judgment entered on February 18, 2026 pursuant to Fed. R. Civ. P. 59(e). [DE 34]. Plaintiff Barry Hunter ("Hunter") has responded, [DE 39], and Defendants replied [DE 40]. Briefing is complete and the matter is ripe. For the following reasons, the Court **DENIES** Defendants' motion for relief from judgment.

## I. BACKGROUND

Hunter was employed by Defendants from 1969 through 2001, during which time he was exposed to coal and rock dust, leading to long-term breathing issues. [DE 20-13 at 1010–12, 1044]. On March 21, 2017, Hunter filed a claim for disability benefits pursuant to the Black Lung Benefits Act ("BLBA") with the Department of Labor ("DOL") Office of Workers' Compensation Programs ("OWCP"). [DE 27-1]. On January 4, 2019, an OWCP claims examiner issued a "Proposed Decision and Order" finding that Hunter had contracted pneumoconiosis as a result of his coal mine employment and was entitled to benefits, to be paid by Defendants. [OWCP Proposed Decision and Order, DE 27-2 at 1422]. Defendants then appealed the determination to the DOL Office of Administrative Law Judges ("OALJ") and requested a formal hearing before an Administrative Law Judge ("ALJ"). [Notice of Appeal, DE 27-3]. Meanwhile, on February 12,

2019, the District Director for OWCP sent a letter to Defendants instructing that they must begin payment of benefits within 30 days of the date of the letter. [DE 27-5 at 1438]. The letter also instructed Defendants that

> [s]hould you fail to begin payment to the claimant, benefits will be paid by the Black Lung Disability Trust Fund in accordance with 20 CFR 725.420(a). If you are subsequently determined to be liable for the claim, you will be required to reimburse the Fund for all payments made up to that time. In addition, in accordance with 725.420(c) you will be liable for such penalties and interest as are deemed appropriate together with the payment of the claimant's attorney fee, if any.

[*Id.*]. Additionally, on February 12, OWCP sent a letter to Hunter informing him that payments would be made from the Black Lung Disability Trust Fund ("Trust Fund") until his claim was finally decided. [DE 27-6 at 1443]. The letter also explained that the Trust Fund's payment of benefits would be limited to benefits accruing from the date of the initial determination, which in this case was $990.10 per month. [*Id.*]. The District Director then referred the matter to the OALJ. [DE 20-13 at 3].

The ALJ held a hearing on December 11, 2019, and issued a decision on May 24, 2021, finding that Hunter was entitled to benefits dating back to March 2017, to be paid by Defendants. [ALJ Decision and Order, DE 20-14]. Accordingly, on June 1, 2021, the OCWP sent Defendants a letter (hereinafter, "June 1, 2021 computation of benefits") instructing them to pay: (1) $22,649.20 to Hunter for benefits from March 2017 through January 2019; (2) $28,607.20 to the Trust Fund for interim benefits paid to Hunter from February 2019 through May 2021; (3) $2,508.04 to the DOL for diagnostic testing and travel; (4) $4,571.25 to the DOL for medical treatment incurred; and (5) $1,040.40 per month to Hunter beginning in June 2021 [DE 27-8 at 1479]. Meanwhile, Defendants appealed the ALJ decision to the DOL Benefits Review Board. [DE 27-9]. While the appeal was pending, the Trust Fund continued to pay Hunter his benefits. [DE 20-12].

On December 28, 2022, the Benefits Review Board affirmed the ALJ's decision with respect to both Hunter's entitlement to benefits and Defendants' liability. [DE 20-8]. Thus, on January 3, 2023, the OWCP issued a pay order directing Defendants to begin providing monthly benefits to Hunter beginning January 2023 at a rate of $1,106.90 and to reimburse the Trust Fund for past benefits paid to Plaintiff, at that point totaling $48,649.60. [DE 204; DE 27-12]. However, prior to that letter, Defendants appealed the Benefits Review Board's decision to the Sixth Circuit Court of Appeals. [DE 20-19; DE 27-13]. While the appeal was pending, on August 8, 2023, Defendants reached an agreement with the DOL with respect to Hunter's claim and hundreds of other pending black lung benefits claims. [Mot. to Dismiss Appeal, DE 27-17; Agreement to Resolve Liability Dispute, DE 27-16]. Under the agreement, Defendants agreed to pay the DOL a lump sum of $72 million, and in exchange, the Trust Fund would pay all benefits owed by Defendants to claimants "now and in the future." [DE 27-16 at 1537–38]. The agreement also provided that Defendants would remain liable for auxiliary benefits in disputed claims, excluding auxiliary benefits in future disputed claims. [*Id.* at 1538]. The agreement defines "auxiliary benefits" as "[a]dditional compensation and [a]ttorney's [f]ees." [*Id.* at 1536]. Under the agreement, Defendants then moved to voluntarily dismiss its appeal with the Sixth Circuit. [DE 27-17]. On May 7, 2024, the Sixth Circuit granted the motion and remanded the case "to the District Director for initiation of payment under the settlement agreement with instructions that any petitions for attorney fees or additional compensation under 33 U.S.C. § 914 (f) be provided to counsel for [Defendants]." [Order Remanding, DE 27-18 at 1551].

Hunter states that "in May 2024, [he] was finally paid all the benefits he had been owed since soon after the June 2021 computation letter through payments from the [Trust Fund]." [DE 20-1 at 106]. On July 1, 2024, Hunter's counsel wrote to the OWCP maintaining that, although the

Trust Fund paid Hunter past due benefits under the agreement with Defendants, Defendants remained liable for "attorneys' fees, expenses, and other benefits that should be awarded[,]" including "interest and penalties [Defendants] should pay for failing to pay Mr. Hunter's benefits when they were due, within 40 days of the June 1, 2021 [computation of benefits]." [DE 27-20 at 1553]. Counsel therefore requested that the OWCP instruct Defendants "to pay the penalty and interest contemplated in 20 C.F.R. Sections 725.607 and 725.608 . . . ." [*Id.*]. The letter also stated that

> Since [Defendants were] liable for all benefits due until it reached its settlement in August 2023, . . . it should pay penalty and interest on all amounts owed through July 2023 and request that your office calculate that. The penalty should be 20% of all unpaid benefits. Mr. Hunter is entitled to these sums due to the significantly delayed payment on his benefits and as is clearly explained **in 20 C.F.R. Sections 725.607 and 725.608**.

[*Id.*]. On July 11, 2024, Defendants responded to Hunter's letter, asserting several defenses to Hunter's request for additional compensation and interest. [DE 27-21]. Defendants argued, first, that "[n]o request for any additional benefits was ever made following the decision of the Board remanding this matter for payment under the settlement agreement[,]" so no "additional compensation is appropriate." [*Id.* at 1588]. Defendants also noted that

> we are preserving whether the current statutory scheme and particularly any limitations on the appellate process of a responsible operator or its carrier would be a violation of due process. Additionally, in the recent Supreme Court decision in *SEC v. Jarkesy*, the court has held a federal agency (DOL) cannot enforce a civil penalty against Defendant Employer. It [sic] Attorney Vowels wants to seek enforcement of this penalty; he must bring the action in federal court as the Court in *Jarkesy* held Defendant Employer is entitled to a jury trial.

[*Id.*]. On October 25, 2024, OWCP Claims Examiner Rose Douglas issued a determination (hereinafter, "October 25, 2024 computation of benefits") on Plaintiff's additional compensation request, finding that, under 20 C.F.R. § 725.607, "20% additional compensation is due in the amount of $12,122.00 ($60,610.00 X 20%)" because Defendants failed to pay benefits within 40

days of the initial request. [DE 27-22 at 1590]. Defendants responded to the determination, reiterating their disagreement with the finding. [DE 27-23].

On March 4, 2025, Hunter filed the instant action in this Court seeking: (1) enforcement of the 20 percent additional compensation assessed by the Claims Examiner in the amount of $12,122 [DE 1 at 6]; (2) payment of "interest on the additional compensation that has been owed but not paid as well as interest on all benefits Hunter did not collect when due" [*Id.* at 7]; and (3) payment of attorney's fees and litigation expenses incurred in seeking payment of penalty and interest. [*Id.* at 8]. On February 19, 2026, the Court granted in part Hunter's motion for summary judgment, awarding Hunter additional compensation and ordering the parties to submit a joint report on the final interest payment due. [DE 30].

## II. STANDARD

The Federal Rules of Civil Procedure permit litigants subject to an adverse judgment to file a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). *Harvey v. United States*, No. 1:11-CR-24-TBR, 2017 WL 89492, at *1 (W.D. Ky. Jan. 9, 2017). The burden of showing entitlement to relief is on the moving party. *Ayers v. Anderson*, No. 3:16-CV-00572-CRS, 2018 WL 3244410, at *2 (W.D. Ky. July 3, 2018) (citation omitted).

Rule 59(e) is intended to permit a court to "rectify its own mistakes in the period following the entry of judgment." *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982). A court "may alter or amend a prior judgment under Rule 59(e) based on '(1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). A Rule 59(e) motion is not "an opportunity to reargue a case" or raise arguments that could or should

have been raised before the court issued the judgment. *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008); see *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). That is, "[a] Rule 59(e) motion is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier, but were not." *Gulley v. Cnty. of Oakland*, 496 F. App'x 603, 612 (6th Cir. 2012). Rule 59(e) motions are "extraordinary and sparingly granted." *Marshall v. Johnson*, No. 3:07-CV-171, 2007 WL 1175046 (W.D. Ky. Apr. 19, 2007); *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 n. 5 (6th Cir. 1982).

## III. DISCUSSION

Defendants argue that the Court's reasoning in its summary judgment Order constitutes a clear error of law, warranting relief under Federal Rule of Civil Procedure 59(e). First, Defendants argue that the Court erred by finding that the benefits at issue were "unpaid," given that such benefits were paid by the Trust Fund on Defendants' behalf pursuant to a settlement agreement. [DE 34 at 1667–68]. Second, they maintain that the Court failed to account for the distinctions between the Longshore and Harbor Workers' Compensation Act ("LHWCA") and the BLBA, applying principles in the BLBA context that should only apply in the LHWCA context. [*Id.* at 1668]. Third, they argue that the Court improperly treated the ALJ order establishing Hunter's entitlement to benefits as a "compensation order" within the meaning of 33 U.S.C. § 919(e) and that the Court wrongfully exceeded its authority to enforce a compensation order by determining the specific amount owed. [*Id.* at 1674]. Fourth, Defendants contend that the Court improperly expanded the definition of "unpaid benefits" to include amounts owed as reimbursements to the Trust Fund and DOL "that were never determined to be penalty-eligible benefits in any administrative order." [*Id.* at 1677–78]. Relatedly, they maintain that the district court is limited to enforcing final administrative orders in the BLBA context, and that the Court exceeded its

enforcement authority by calculating the amount owed. [*Id.* at 1679–81]. Fifth, Defendants argue that the Court's interpretation of the BLBA is unconstitutional because it undermines their right to appeal under the Administrative Procedure Act ("APA"). [*Id.* at 1681]. Finally, they assert that the Court's interest award also fails because that award is based on the Court's erroneous additional compensation determination. [*Id.* at 1684].

1. <u>Settlement Agreement</u>

Defendants maintain that the Court "fail[ed] to account for the binding settlement agreement between Defendants and the Department of Labor governing payment of benefits in this case." [*Id.* at 1667]. Pursuant to that agreement, Defendants paid the DOL a lump sum of $72 million, and the DOL agreed that the Trust Fund would pay "all Basic Benefits owed in Disputed Claims to Claimants . . . now and in the future." [DE 27-16 at 1537–38]. Defendants argue that this agreement shifted the liability for payment of benefits to the Trust Fund, such that payments were no longer "made under the normal statutory scheme but were instead an assignment of who would make the payments owed[.]" [DE 34 at 1667]. According to Defendants, because payments were made by the Trust Fund, "on Defendants' behalf," those amounts cannot be considered "unpaid." [*Id.* at 1668].

To the extent Defendants argue that the settlement agreement shifted all liability for the payment of benefits to the Trust Fund, the explicit terms of the settlement agreement refute that. The settlement agreement states that "[a]fter the Payment Date, the [Trust Fund] will pay all Basic Benefits owed in Disputed Claims to Claimants entitled to those benefits, now and in the Future. This includes Basic Benefits owed for periods before the Payment Date." [DE 27-16 at 1537–38]. Under the agreement, "Basic Benefits" means "the monthly disability benefits, medical benefits, and diagnostic expenses that the responsible operator is liable to pay under the BLBA. It does not

include Additional Compensation or Attorney's Fees." [*Id.* at 1536]. The agreement also states that "Peabody will retain liability for Auxiliary Benefits in Disputed Claims, except that it will not be liable for Auxiliary Benefits in Future Disputed Claims." [*Id.* at 1538]. "Auxiliary benefits" is defined as "Additional Compensation and Attorney's Fees." Accordingly, the terms of the agreement explicitly provide that Defendants will remain liable for the payment of additional compensation and attorney's fees, and that the "basic benefits" for which the Trust Fund is responsible do not include additional compensation or attorney's fees. In other words, the agreement took account of the different types of compensation provided for in the BLBA: (1) the monthly installment payments payable under the terms of an award, and (2) the amount of "additional compensation for *overdue* installment payments" due under § 914(f). The agreement purports to shift liability to the Trust Fund only for the first type of compensation—the monthly benefits the operator is liable to pay under the BLBA. [DE 27-16 at 1536].

The only compensation at issue in this case is the additional compensation owed for overdue installment payments—the exact compensation that, under the settlement agreement, remains in the hands of Defendants. Moreover, the DOL's black lung regulations provide that the Trust Fund "may not be held liable for payments of additional compensation under any circumstances." 20 C.F.R. § 725.607. Thus, even if the settlement agreement purported to shift liability for the payment of additional compensation to the Trust Fund, this would have been impermissible under DOL regulations.

2. Distinctions between LHWCA and BLBA

Next, Defendants argue that the Court inappropriately applied "[LHWCA] penalty principles without accounting for the distinct structure of the [BLBA]." [DE 34 at 1668]. Though the "additional compensation" provision of the LHWCA, 33 U.S.C. § 914(e), has been

incorporated into the BLBA via 30 U.S.C. § 932(a), Defendants maintain that there are structural differences between the two statutory frameworks such that the provision should not be applied with equal force in the black lung context. [DE 34 at 1669–70]. Specifically, Defendants maintain that in the LHWCA context, the additional compensation provision "functions as an enforcement mechanism designed to ensure prompt payment once compensation becomes due." [*Id.* at 1670]. In the LHWCA context, Defendants argue, this penalty is necessary because there is no Trust Fund that will make payments during the pendency of an appeal. [*Id.* at 1671–72]. In the BLBA context, however, Congress created the Trust Fund "to ensure that claimants receive benefits even while liability is disputed or appeals are pending." [*Id.* at 1672]. Defendants maintain that, because BLBA claimants—unlike LHWCA claimants—are still paid by the Trust Fund during an appeal, they do not have "unpaid benefits" in the same way that LHWCA claimants do. [*Id.*].

Under the LHWCA, "[i]f any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof[.]" 33 U.S.C. § 914(f). The BLBA expressly "incorporates significant portions of the LHWCA, including the . . . provision at issue, 33 U.S.C. § 914(f)." *Byrge on behalf of Est. of Byrge v. Premium Coal Co. Inc.*, 301 F. Supp. 3d 785, 794 (E.D. Tenn. 2017); 30 U.S.C. § 932(a); *see also Combs v. Elkay Min. Co.*, 881 F. Supp. 2d 728, 732 (S.D.W. Va. 2012) ("The BLBA provides additional compensation for the late payment of awards."); *Rice on behalf of Est. of Rice v. Bituminous Cas. Corp.*, 666 F. Supp. 3d 674, 687 (E.D. Ky. 2023) ("Congress made the decision to incorporate certain LHWCA's procedures, § 914(f) included, into the BLBA."). 30 U.S.C. § 932(a) also "permits the Secretary of Labor to vary the LHWCA provisions by issuing regulations." *Combs*, 881 F. Supp. 2d. at 730; *Old Ben Coal Co. v. Jones*, 897 F.2d 900, 902 (7th Cir.1990) (explaining that "the Black Lung Act regulations . . . supplement

and, where inconsistent, supplant sections adopted from the Longshore Act."). In accordance with that directive, the Secretary promulgated 20 C.F.R. § 725.607, which provides that

> If any benefits payable under the terms of an award by a District Director (§ 725.419(d)), a decision and order filed and served by an administrative law judge (§ 725.478), or a decision filed by the Board or a U.S. court of appeals, are not paid by an operator or other employer ordered to make such payments within 10 days after such payments become due, *there will be added to such unpaid benefits an amount equal to 20 percent thereof*, which must be paid to the claimant at the same time as, but in addition to, such benefits, unless review of the order making such award is sought as provided in section 21 of the LHWCA and an order staying payments has been issued.

20 C.F.R. § 725.607(a) (emphasis added).

Defendants argue that, because the Trust Fund makes interim payments to claimants in black lung cases, there are no "unpaid benefits" owed to the claimant. [DE 34 at 1673]. And because there are no "unpaid benefits," the additional compensation provision under 20 C.F.R. § 725.607(a) and 33 U.S.C. § 914(f) should not be triggered. [*Id.* at 1673]. Yet the DOL regulation addressing this issue is clear:

> If, on account of an operator's or other employer's failure to pay benefits as provided in paragraph (a) of this section, *benefit payments are made by the fund*, *the eligible claimant will nevertheless be entitled to receive such additional compensation to which he or she may be eligible under paragraph (a)*, with respect to all amounts paid by the fund on behalf of such operator or other employer.

20 C.F.R. § 725.607(b) (emphasis added). This "unambiguous language disposes of any assertion that the twenty percent penalty was not intended to apply whenever the Trust Fund makes payments on an operator's behalf." *Nowlin v. Eastern Associated Coal Corp.*, 331 F. Supp. 2d 465, 474 (N.D.W. Va. 2004). As far as the Court is aware, every court that has addressed this issue has agreed that claimants are entitled to 20 percent additional compensation on amounts owed by the operator but paid by the Trust Fund while an appeal is pending. *See Hudson v. Pine Ridge Coal Co., LLC*, No. CIV.A. 2:11-00248, 2012 WL 386736, at *6 (S.D.W. Va. Feb. 6, 2012); *Byrge*, 301

F. Supp. 3d at 800; *Rice*, 666 F. Supp. 3d at 687; *Thacker on behalf of Est. of Clevenger v. Old Republic Ins. Co.*, 416 F. Supp. 3d 651, 667 (E.D. Ky. 2019); *Burton v. Drummond Co. Inc.*, 350 F. Supp. 3d 1198, 1208 (N.D. Ala. 2018). Thus, both the regulations and the caselaw support the Court's finding that "unpaid benefits" existed—thus triggering the additional compensation requirement—even though the Trust Fund made interim payments. Defendants point to no caselaw that would support their contrary interpretation.

Defendants argue that the purpose of the "additional compensation" requirement—to ensure timely payment from operators—is inapplicable in the BLBA context, where the Trust Fund makes interim payments. [DE 34 at 1673]. However, the additional compensation provision of § 914(f) serves different purposes under the LHWCA and the BLBA. In the LHWCA context, § 914(f) "encourages employers to provide prompt payment of compensation to injured workers." *Newport News Shipbuilding & Dry Dock Co. v. Brown.*, 376 F.3d 245, 250 (4th Cir. 2004). In the BLBA context, § 914(f) "ensure[s] that individual coal operators rather than the [Trust Fund] bear the liability for claims arising out of such operators' mines to the maximum extent feasible." *Hudson*, 2012 WL 386736, at *5 (quoting *Old Ben Coal*, 897 F.2d at 693); *see also Byrge*, 301 F. Supp. 3d at 799 ("[T]he purpose of the additional compensation is to discourage employers from shifting the risk to the Trust Fund[.]"); *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 313 (6th Cir. 2014) ("To ensure that the fund does not bear the sole burden of black lung claims, the [DOL], following congressional authorization, established regulations to ensure that coal mine operators are liable 'to the maximum extent feasible' for awarded claims."). Thus, treating benefits paid by the Trust Fund as "unpaid" does not "depart[] from both the structure and operation of the Black Lung program," as Defendants claim. [DE 34 at 1673]. Rather, treating such benefits as unpaid serves to encourage payment from the operator as opposed to the Trust Fund.

Dispelling the exact argument that Defendants make in this case, a court in the Northern District of Alabama aptly observed the following:

> Congress did not simultaneously incorporate § 914(f) into the BLBA and create the Black Lung Disability Trust Fund. To be sure, those two events were separated by some eight years. Congress incorporated § 14(f) of the LHWCA (codified as amended at 33 U.S.C. § 914(f)) into Title IV of the Federal Coal Mine Health and Safety Act in 1969. Eight years later, Congress passed the Black Lung Benefits Revenue Act of 1977, creating the Black Lung Disability Trust Fund. Thus, when Congress incorporated § 914(f) into the BLBA, the provision was doubtless understood to have the same meaning it bore under the LHWCA. Accordingly, there can be no argument that Congress silently changed the meaning of § 914(f) when it incorporated the provision into Title IV of the Federal Coal Mine Health and Safety Act of 1969, as the Trust Fund was not created until more than eight years later.
>
> Nor can there be any argument that the creation of the Trust Fund in 1977 silently changed the meaning of § 914(f) in BLBA cases. On this silent-amendment theory, the creation of the Trust Fund would have relieved operators of significant liability under § 914(f), since they would never be liable for additional compensation so long as the Trust Fund timely paid benefits in their stead. But the statute creating the Trust Fund refutes that theory by providing that "nothing in this section shall affect the rights, duties, or liabilities, of any operator in proceedings under [30 U.S.C. § 932]." In short, the phrase "is not paid" in § 914(f) means the same thing under the BLBA that it meant under the LHWCA: not paid by the responsible operator.

*Burton*, 350 F. Supp. 3d at 1208 (citations omitted). In other words, Congress has given no indication that the creation of the Trust Fund warrants a different understanding of "unpaid benefits" or "additional compensation" in the BLBA context than it does in the LHWCA context.

3. Treatment of ALJ Order as a "Compensation Order"

Defendants next argue that the Court improperly treated the ALJ's May 24, 2021 order as a "compensation order" under 33 U.S.C. § 919(e). [*Id.* at 1674–75]. They maintain that the ALJ order merely establishes the claimant's entitlement to benefits; "it does not itself determine the amount owed or render those benefits immediately payable." [*Id.* at 1676]. Thus, Defendants argue that the "actual payment obligation arises only after the District Director performs the benefit

computation required by 20 C.F.R. § 725.502(b)(2)." [*Id.* at 1675]. According to Defendants, it was improper for the Court to treat the ALJ order as "the operative order triggering the § 914(f) penalty" and to "determine the amount of additional compensation owed." [*Id.* at 1677].

§ 914(f)'s additional compensation requirement is triggered "[i]f any compensation, payable under the terms of an award, is not paid within ten days after it becomes due[.]" 33 U.S.C. § 914(f); *see also* 20 C.F.R. § 725.607(a) ("If any benefits payable under the terms of an award by a district director (§ 725.419(d)), a decision and order filed and served by an administrative law judge (§ 725.478), or a decision filed by the Board or a U.S. court of appeals, are not paid by an operator or other employer ordered to make such payments within 10 days after such payments become due, there will be added to such unpaid benefits an amount equal to 20 percent thereof[.]"). 20 C.F.R. § 725.502 then provides that benefits "shall be considered due after the issuance of an effective order requiring the payment of benefits by a district director, administrative law judge, Benefits Review Board, or court . . . ." 20 C.F.R. § 725.502(a)(1). The only exception to this rule is "where the payment of such benefits has been stayed by the Benefits Review Board or appropriate court." *Id.* Then, "[w]ithin 30 days after the issuance of an effective order requiring the payment of benefits, the district director shall compute the amount of benefits payable for periods prior to the effective date of the order, in addition to any interest payable for such periods." 20 C.F.R. § 725.502(b)(2). "Benefits and interest payable for such periods shall be due on the thirtieth day following issuance of the district director's computation." *Id.*

The regulations are clear that an operator's liability for additional compensation arises if the operator fails to pay benefits required by an ALJ order "within 10 days after such payments become due." 20 C.F.R. § 725.607(a); *see also* 33 U.S.C. § 914(f) ("If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added

to such unpaid compensation an amount equal to 20 per centum thereof."). It is not disputed that the ALJ order in this case established Hunter's entitlement to benefits. By the plain language of the statute and regulations, a failure to pay such benefits within 10 days after they become due triggers the additional compensation requirement. The question, then, is simply when payments became "due."

Under 20 C.F.R. § 725.502, benefits become due "after the issuance of an effective order requiring the payment of benefits by a district director, administrative law judge, Benefits Review Board, or court[.]" 20 C.F.R. § 725.502(a)(1). An order becomes "effective" when it is filed in the office of the District Director. 20 C.F.R. § 725.479(a). Here, the ALJ's May 24, 2021 order was filed with the office of the District Director the same day of its issuance. [DE 20-14 at 1270]. Accordingly, the ALJ order was an "effective order" on May 24, 2021, and benefits became due on that date.

As to benefits payable for periods before the effective order, 20 C.F.R. § 725.502(b)(2) provides that "[w]ithin 30 days after the issuance of an effective order requiring the payment of benefits, the district director shall compute the amount of benefits payable for periods prior to the effective date of the order . . . and shall so notify the parties." *Id.* § 725.502(b)(2). § 725.502(b)(2) further provides that "[b]enefits and interest payable for such periods shall be due on the thirtieth day following issuance of the district director's computation." *Id.* Accordingly, for benefits payable prior to the issuance of the ALJ order, such benefits became due 30 days following issuance of the district director's computation, which occurred on June 1, 2021. [DE 27-8].

It is undisputed that Defendants failed to pay *any* benefits to Hunter throughout the appeals process. Accordingly, they failed to pay the required compensation within 10 days after it became due, thus triggering § 914(f)'s compensation requirement. Defendants maintain that "the regulation

expressly contemplates that the ALJ's order functions as a prerequisite to the District Director's computation, which must then determine the specific benefits payable in accordance with the terms of the order." [DE 34 at 1676]. Defendants highlight the language of 20 C.F.R. § 725.502(b)(2), which applies only to the computation of the "amount of benefits payable for *periods prior to the effective date of the order*" and provides that such benefits become due on the "thirtieth day following issuance of the district director's computation." 20 C.F.R. § 725.502(b)(2) (emphasis added). Defendants argue that, because the district director must compute the amount of benefits for periods before the effective order, the ALJ order itself cannot be a "final enforceable payment directive." [DE 34 at 1677]. Yet, Defendants ignore 20 C.F.R. § 502(a)(1), which expressly provides that benefits become due "after the issuance of an effective order requiring the payment of benefits by a[n] . . . administrative law judge[.]" 20 C.F.R. § 502(a)(1). Thus, there were two sets of benefits that became due at different times: (1) those payable for periods before the effective date of the ALJ order, and (2) those payable for period after the effective date of the ALJ order. The first set of benefits became due "on the thirtieth day following issuance of the district director's computation," per 20 C.F.R. § 725.502(b)(2). In this case, the district director issued the computation of benefits on June 1, 2021, [DE 27-8 at 1479], so those benefits became due on July 1, 2021. The second set of benefits became due after issuance of "an effective order requiring the payment of benefits by a[n] . . . administrative law judge," per 20 C.F.R. § 725.502(a)(1).

Defendants failed to pay either set of benefits within 10 days after they became due, thus triggering the additional compensation requirement. 33 U.S.C. § 914(f) ("If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof."). Under the

plain language of § 914(f), Defendants triggered the 20 percent additional compensation requirement by failing to pay benefits when they became due.

Defendants maintain that the ALJ order is not a "compensation order" as contemplated by 33 U.S.C. § 919(e) and therefore that the Court lacked authority to determine the amount of benefits payable under that order. [FDE 34 at 1677]. According to Defendants, even if the ALJ order established an obligation to pay, the Court exceeded its enforcement authority by calculating the amount of unpaid benefits to which the 20 percent additional compensation attached. That argument is contrary to the approach of other courts in this Circuit as well as the language of the regulations.

In *Thacker*, the Eastern District of Kentucky rejected defendant's argument that the district director's computation was the relevant "compensation order" that the court had the power to enforce. 416 F. Supp. 3d at 658. The court explained that the district director's computation of benefits "[did] not fit into the definition of compensation order provided by 33 U.S.C. § 919(e)" because it was not an "order rejecting the claim or making the award." *Id.* (quoting 33 U.S.C. § 919(e)). Rather, the computation of benefits was a "letter containing a computation of benefits issued '[i]n accordance with the Decision and Order – Awarding Benefits issued by the Benefits Review Board.'" *Id.* Much like in *Thacker*, the computation of benefits at issue here states that it is issued "[i]n accordance with the Decision and Order – Awarding Benefits issued by [the ALJ] dated May 24, 2021," suggesting that the ALJ order is the relevant compensation order. [DE 27-8 at 1479]. As the *Thacker* court noted, the language of the regulations also supports the view that the district director's computation as the relevant compensation order. For instance, 20 C.F.R. § 725.502 states that "[a]ny computation made by the district director . . . shall strictly observe the terms of the order," suggesting that the computation itself is not an "order." 20 C.F.R.

§ 725.502(b)(2). The *Thacker* court therefore found that the ALJ order was a "compensation order" and that the court had power to enforce that order. *Thacker*, 416 F. Supp. 3d at 660–62.

In *Byrge*, the Eastern District of Tennessee likewise found that the ALJ order was the "compensation order," while the computation of benefits was simply a "letter[] calculating the specific amount owed[.]" 301 F. Supp. 3d at 797. Although the ALJ order did not "reference the 20% additional compensation," the court explained that the right to additional compensation under § 914(f) arose automatically "upon the expiration of the ten-day period following the filing of the compensation order with the deputy commissioner." *Id.* at 798. Numerous other courts, both inside and outside this circuit, have similarly ruled that the ALJ order is the relevant compensation order for purposes of enforcement in the district court. *See, e.g.*, *Rice*, 666 F. Supp. 3d at 685; *Vialpando v. Chevron Mining, Inc.*, No. 18-251-BRB-SCY, 2018 WL 5017754, at *3 (D.N.M. Oct. 16, 2018); *Hudson*, 2012 WL 386736, at *4.

Under 33 U.S.C § 921(d), if an operator fails to comply with a compensation order, the beneficiary "may apply for the enforcement of the order to the Federal district court[.]" Given that the ALJ order is the relevant "compensation order," a claimant may seek enforcement of that order in a district court *regardless* of the computation of benefits. Recognizing this, courts regularly find that claimants may seek enforcement of the 20 percent additional compensation without first obtaining a supplemental order by the district director specifying the amount owed. In such cases, the court performs its own calculation of unpaid benefits.

For instance, in *Nowlin v. Eastern Associated Coal Corporation*, the plaintiff filed an action under 33 U.S.C. § 921(d) to recover 20 percent additional compensation, despite the lack of a computation of benefits from the district director. 266 F. Supp. 2d 502, 503 (N.D.W. Va. 2003). The defendant argued that a supplementary order from the district director was "necessary

to indicate the amount of unpaid benefits on which a 20% penalty is assessed." *Id.* at 508. The court rejected that argument for several reasons. First, the district director provided the court with an *amicus* brief concluding that "a supplementary order is not a prerequisite to a § 921 action[.]" *Id.* at 507. Second, the district director's interpretation of § 921 was consistent with the statutory language. Specifically, the court noted the difference in the language of the two different enforcement provisions of the BLBA—33 U.S.C. § 918, which requires a supplementary order, and 33 U.S.C. § 921(d), which does not. While § 918 permits the enforcement of effective, "but not-yet-final awards, § 921 permits the enforcement of final awards." *Id.* at 508. "Because § 918(a) allows a claimant to enforce a 20% penalty when a claim is still being litigated and is not final, it predictably requires the claimant to obtain a supplementary order declaring the amount of default." *Id.* In contrast, a claimant proceeds under § 921(d) when he has defended his claim "through the appellate process and to finality." *Id.* Thus, in an action under § 921(d), it is reasonable that no supplementary order is required because "in such an action, an award of benefits has become final and a court can determine the amount on which the penalty is calculated without difficulty." *Id.* Accordingly, the court found that no supplemental order specifying the amount owed was necessary, and the court calculated the amount itself. *See Nowlin v. E. Associated Coal Corp. (Nowlin II)*, 331 F. Supp. 2d 465, 472 (N.D.W. Va. 2004). Courts regularly take the same approach as *Nowlin*, finding that they may calculate the amount of "unpaid benefits" without the benefit of a computation from the district director. *See, e.g.*, *Combs*, 881 F. Supp. 2d. at 735–37; *Rice*, 666 F. Supp. 3d at 688.

This action, like *Nowlin*, was brought pursuant to a final award under § 921(d), which requires no supplementary order. The fact that the district director issued a computation of benefits in this case does not eliminate the Court's ability to independently calculate the amount of unpaid

benefits, which many other courts have done and which the regulations allow. In other words, if a claimant can seek enforcement in district court of an ALJ order without a computation of benefits at all—as § 921(d) suggests—then the district court can likewise determine the amount of benefits due under that ALJ order when a computation of benefits does exist.

4. Amounts Included in "Unpaid Benefits"

Defendants next argue that the Court "improperly expanded the definition of 'unpaid benefits' to include Trust Fund and government reimbursement obligations[.]" They maintain that the Court "did more than enforce a compensation order" by "independently determin[ing] the categories of payments constituting 'unpaid benefits,' calculating the resulting penalty base, and impos[ing] a penalty amount that had never been awarded in any administrative order." [DE 34 at 1679]. Defendants, in turn, maintain that the Court's exceeded its enforcement role in determining that the amount of "unpaid benefits" should include certain amounts not included in the district director's computation, such as payments the Defendants owed to the DOL and the Trust Fund for interim benefits, diagnostic testing and travel, and medical treatment. [*Id.* at 1679–80; *see also* DE 30 at 1643].

As already explained, the Court's power to enforce a compensation order includes the power to determine the amount owed under that order. As explained in *Youghiogheny & Ohio Coal Co. v. Vahalik*, "Congress has provided an elaborate administrative structure and review process for the determination of *claims eligibility and operator liability*." 970 F.2d 161, 162 (6th Cir. 1992). In other words, the question of whether an operator is *liable* for additional compensation rests solely with the DOL. *Id.* However, "[o]nce final eligibility and liability determinations are made . . . the benefits of agency expertise become irrelevant, and jurisdiction is vested in district courts for the enforcement of the agency orders." *Id.* In this case, the ALJ order

determined Defendants' liability. The Court properly exercised its jurisdiction to enforce the award, and the Court had before it all the necessary materials to determine the amount owed.

Moreover, the statutory and regulatory language does not support limiting the amount included in "unpaid benefits" to only those benefits owed to the claimant, as Defendants suggest. As the Court noted in its original order, 20 C.F.R. § 725.607 provides that "[i]f *any* benefits payable under the terms of . . . a decision and order . . . by an administrative law judge . . . are not paid by an operator or other employer" within ten days after payment becomes due, "there will be added to such unpaid benefits an amount equal to 20 percent thereof." 20 C.F.R. § 725.607(a) (emphasis added). Moreover, § 914(f) applies to "*any* compensation, payable under the terms of an award[.]" 33 U.S.C. § 915(f). That is, the rules speak of "any" benefits owed under an order, not only benefits owed to the plaintiff. Defendants do not address this language. Nor do Defendants address the cases that include in "unpaid benefits" amounts owed to the Trust Fund. *See, e.g.*, *Thacker*, 416 F. Supp. 3d at 659 (awarding additional compensation based on 20 percent of $40,813.40—the amount defendant owed in reimbursement payments to the Trust Fund); *Rice*, 666 F. Supp. 3d at 688 (including in "unpaid benefits" calculation the $12,500.70 interim benefits paid by the Trust Fund to plaintiff). Instead, Defendants merely argue that the Court exceeded its authority by performing its own calculation of "unpaid benefits." [DE 34 at 1681]. But as explained, the Court is not beholden to the district director's computation of benefits. Accordingly, Defendants' argument on this ground fails.

5. Constitutionality

Next, Defendants argue that the Court's approach is unconstitutional because it undermines the Defendants' ability to appeal under the APA, 5 U.S.C. § 702. [DE 34 at 1681–82]. They

maintain that imposing a 20 percent penalty based on an order while Defendants were exercising their right to appeal "deprives Defendants of the benefit of that review." [*Id.* at 1682].

However, the regulatory scheme provides a safeguard for operators who wish to seek an appeal. Specifically, § 914(f) states that additional compensation is due when compensation is not paid within 10 days after it becomes due *unless* the claimant seeks review of the order and "an order staying payment has been issued by the Board or court." 33 U.S.C § 914(f). 20 C.F.R. § 725.607 states the same. 20 C.F.R. § 725.607(a) (stating that additional compensation must be paid "unless review of the order making such award is sought as provided in section 21 of the LHWCA and an order staying payments has been issued"). Thus, the statute and regulations provide that operators may avoid the additional compensation requirement if they obtain a stay while exercising their right to appeal. As explained in the Court's original opinion, Defendants did not seek a stay. [DE 30 at 1634, 1642]. Defendants' argument that the difficulty of obtaining a stay "underscores the risk" of a due process deprivation has little merit when Defendants did not even ask for a stay.

Defendants also argue that "allowing a district court to calculate penalties without an antecedent administrative determination" denies operators "access to the administrative processes ordinarily used to resolve such issues." [DE 34 at 1683]. As the Court has already found, this argument has no merit. The statute allows a district court to enforce an ALJ order, and part of that enforcement involves reviewing the record to determine the amount due. Defendants also went through thorough administrative proceedings. They were found liable for Hunter's benefits by the district director, [DE 20-13], then by the ALJ after a hearing, [DE 20-14], then on appeal at the Benefits review Board. [DE 20-8]. Defendants then appealed again to the Sixth Circuit, and

ultimately agreed to dismiss the appeal in light of the settlement agreement, which expressly left them liable for "[a]dditional compensation and [a]ttorney's [f]ees." [DE 27-16 at 1536].

6. Interest Award

Finally, Defendants argue that the Court's interest award fails because it is based on an erroneous award of additional compensation. [DE 34 at 1684]. Defendants maintain that, because the Court "improperly included amounts associated with benefits paid by the Trust Fund" in the amount of "unpaid benefits," the Court's calculation of the amount of additional compensation owed was too high, and therefore the Court's finding of interest based on that amount is erroneous. [*Id.* at 1685–86].

This argument rests entirely on the assumption that the underlying "additional compensation" award was based on the erroneous inclusion of benefits owed to the Trust Fund in the amount of "unpaid benefits." The Court has already rejected that argument. Accordingly, because the additional compensation award was valid, the interest award based on that amount was valid.

## IV. CONCLUSION

For the reasons above, the Court **DENIES** Defendants' motion for relief from summary judgment. [DE 34].

Rebecca Grady Jennings, District Judge
United States District Court

November 3, 2026